Hilda McLAREN, Appellant,

v.

HUNTING BAYOU CO. et al., Appellees.

No. 353.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 1, 1970.

Rehearing Denied May 6, 1970.

Richard T. Churchill, Fort Worth, for appellant.

Lynn C. Woods, Jr., Wagner & Woods, Houston, for appellees.

SAM D. JOHNSON, Justice.

Summary judgment case.

This is a suit based upon a renewal and extension of a note and chattel mortgage. The trial court rendered summary judgment in favor of the plaintiffs, Hunting Bayou Company and Jack R. Cobb, and defendant Hilda McLaren has perfected appeal. The parties will sometimes be referred to by their trial court designation.

On December 17, 1963, John Zeke McLaren and his wife, Hilda McLaren, executed a note and chattel mortgage in the amount of $25,239.36 in purchase of a 1963 Peterbilt truck tractor. The note and mortgage were renewed and extended on August 11, 1966 with a note for $22,603.95 and with a lien on a 1965 Peterbilt truck tractor. This note was assigned with recourse by the corporate predecessor of Hunting Bayou Company to First City National Bank of Houston, Texas. Jack R. Cobb executed a guaranty agreement to said bank guaranteeing the payment of 28.438% of the principal and accrued interest on said note in the event of default.

Plaintiffs allege that after a few payments were made on this note defendants defaulted in payment and the bank and its agents took possession of the truck under

provisions of the security agreement. Defendant, on the other hand, alleged that employees of Jack R. Cobb gained possession of the truck while it was in a shop for repairs in Jackson, Mississippi, and that said employees took the truck to Fort Worth, Texas, where it was maintained under lock and key and secured from inspection by the defendant. In either event the balance due on the note was $13,060.06 at the time of repossession and the truck was sold for $3,500.00. The expenses of repossession and sale totaled $1,092.07. The difference between these two figures, $2,407.93, was credited to the amount owed the bank, leaving a balance due of $10,652.13. After unearned interest of $861.73 was deducted, Hunting Bayou Company paid the bank 71.562% of the balance on the note and Jack R. Cobb paid 28.438% of said balance. Hunting Bayou Company brought this action for recovery of the amount they paid in satisfaction of the note, plus interest and attorneys' fees.

Originally this action was brought against both John Zeke McLaren and his wife, Hilda McLaren. Service was not obtained upon John Zeke McLaren and he was dismissed from this suit. Plaintiff and defendant agree that this action is maintainable against Hilda McLaren alone, therefore the correctness of a judgment against her without joinder of her husband is not before this Court.

All of defendant's points of error deal with the correctness of the summary judgment granted to the plaintiff. Therefore a precise statement of the record on which the judgment complained of was made is helpful. The record reflects the following: (1) plaintiff filed a verified petition stating the facts of the case as outlined above to which he attached a copy of the note executed in August, 1966, the security agreement between the McLarens and the bank, the guaranty agreement signed by Jack R. Cobb, and an expense sheet for the expenses of repossessing, repairing and selling the truck tractor. (2) Defendant filed an answer, which she verified, that included special exceptions to plaintiffs' petition, a plea of partial failure of consideration, a plea of a fraudulent sale of the truck tractor for an amount far less than its market value, and a general denial. (3) Plaintiffs filed a motion for an interlocutory summary judgment against Hilda McLaren. Attached thereto was the original note of August, 1966. The motion was not supported by affidavit. (4) Defendant filed an affidavit in opposition to plaintiffs' motion for summary judgment. In the affidavit the defendant limited the following statements to information and belief: that Jack R. Cobb, with the consent of Hunting Bayou Company, removed the engine in the truck and substituted a smaller and inferior engine, that plaintiffs then proceeded to hold the false and fraudulent private sale for a grossly inadequate price, namely $3,500.00 when the truck with the proper engine was worth $12,000; that the sale was made to Jack R. Cobb (one of the plaintiffs) for an amount so far below the actual fair market price that Cobb would not be required to pay out any of his monies on his guaranty agreement but rather would recover monies thereon. The remainder of the affidavit, however, was in no way limited. It affirmatively asserted that the facts stated were within the defendant's personal knowledge and that she was competent to testify to same. In such affidavit defendant stated that the truck was under lease and was being used to transport goods in interstate commerce; that the truck encountered motor trouble in Mississippi where it was placed in a shop for repairs; that without note to or knowledge of the defendant an employee of the plaintiff Cobb took the truck and returned it to Fort Worth, Texas, where it was placed in a locked shop belonging to Cobb where defendant was refused inspection of it; that Cobb purported to work on the truck by removing and replacing the motor, transmission and rear-end while barring the defendant from inspection of the truck or the repairs thereto; that plaintiffs have consistently failed and refused to advise defendants of the name of the purchaser of

the truck at such alleged sale or the terms of such purchase; that the engine with blower and transmission alone was of the value of $3,500; that if the repairs claimed to have been made by the plaintiff had been actually made it would have been in first class operating condition and would have a fair market value of $12,000 or more, which said sum would have retired the note and accrued interest in full but for the fraud and misrepresentations of the plaintiffs. (5) The trial court, upon consideration of the pleadings and affidavit, granted an interlocutory summary judgment of plaintiffs in the amount of $9,790.-40 with interest at the rate of 10% together with $979 attorneys' fees. (6) About five weeks later, the interlocutory judgment was made final against Hilda McLaren after John Zeke McLaren had been dismissed from the action.

██ The underlying purpose of a summary judgment is to eliminate patently unmeritorious claims or untenable defenses. It is not intended to be used as a means of denying a full hearing on any real issue of fact. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). The burden is on the movant in a summary judgment proceeding to establish that there is no genuine issue as to a material fact. Jenkins v. Henry C. Beck Co., 449 S.W.2d 454 (Tex. Sup.1969); Gulbenkian v. Penn, supra. We believe it to be beyond dispute that a movant for summary judgment must meet this burden even though the burden of proving or disproving the existence of the fact in question would be the task of the opposite party at the trial of the cause. Cheatwood v. Jackson, Tex.Civ.App., 442 S.W.2d 789, writ ref., n.r.e., at 445 S.W.2d 513. If an affidavit raises a material fact issue a summary judgment is improper. Christy v. Stauffer Publications, Inc., 437 S.W.2d 814 (Tex.Sup.1969). The affiant must have personal knowledge of statements depended upon to raise a fact issue, and must be competent to testify as to the subject matter of the statement. Youngstown Sheet & Tube Co. v. Penn, 363 S.W.

2d 230 (Tex.Sup.1962); Rule 166–A(e), Texas Rules of Civil Procedure. In addition, the affidavit must be so worded that the statements made therein would be admissible in evidence if the witness attempted to so testify at a trial of the cause. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958); Montez v. Bailey County Electric Co-Operative, Tex.Civ.App., 397 S.W.2d 108, writ ref., n.r.e.; Gaston v. Copeland, Tex.Civ.App. 335 S.W.2d 406, writ ref. n. r.e.

██ In the instant case the plaintiffs as movants had the burden of proving that no genuine issue of a material fact was in existence and chosen to do so by relying on their verified petition and unverified motion. Defendant's response to the motion, made by affidavit, even though sworn to include facts within her knowledge and about which she is competent to testify, contains assertions upon information and belief relative to the alleged modifications and sale of the truck. These statements are insufficient as a matter of law to raise a fact issue which would preclude a summary judgment for plaintiff. Defendant's plea of failure of consideration was likewise insufficient to raise a fact issue. It was merely a legal conclusion supported by no specific evidence. West Coast Mining, Inc. v. Security National Bank of Lubbock, Tex.Civ.App., 442 S.W.2d 821, writ ref., n.r.e.

However, defendant's affidavit closes with the following two paragraphs:

"Plaintiffs have consistently failed and refused to advise Defendants of the name and address of the purchaser of said truck at such alleged sale, or the terms of such purchase, although often requested to do so, and Defendants have been unable to verify the precise details of such sale, however, Defendant Hilda McLaren says that the value of said 1966 Cummins 335 HP diesel engine with blower and the transmission alone was of a market value in November, 1968, of $3,500.00 at Fort Worth, Tarrant County, Texas.

"This Defendant further states that if Plaintiff Jack R. Cobb performed the repairs set forth upon Plaintiffs' Exhibit 'D' which Defendant does not admit but denies, then said truck would have been in first-class operating condition, and would have brought a fair-market sale of $12,000.00 or more from a willing purchaser at Fort Worth, Texas, which said sum would have retired the note and accrued interest in full but for the fraud and misrepresentations of Plaintiffs."

 The foregoing statements, along with the others heretofore enumerated, were sworn to have been made upon the personal knowledge of the defendant about matters to which she was fully competent to testify. See also McCormick & Ray, Vol. 2, Sec. 1422. Although the affidavit contained statements inadmissible as evidence upon trial and a legal conclusion the affidavit was nevertheless viable. Kellum v. Pacific National Fire Ins. Co., Tex.Civ. App., 360 S.W.2d 538, writ ref., n.r.e. Defendant's sworn statement as to the market value of the truck as compared to the price for which it was sold, the great disparity between the two values and the other factual statements relative to the disposition of the truck constitutes evidence of fraud. Under the circumstances here set forth and sworn to in defendant's affidavit a response could have been made had plaintiffs chosen to do so. Plaintiffs could have provided direct evidence as to the foreclosure sale, the values and the other factual matters pled, but elected not to do so.

Factually, Powell v. Associates Investment Co., Tex.Civ.App., 380 S.W.2d 774, no writ hist., is strikingly similar to the instant case. There the mortgagee-plaintiff sold eleven automobiles mortgaged by the mortgagor-defendants for $1,100. There, as here, the disposition of the property was made at a private sale. There the defendant pled that the value of the cars sold was $13,950 and that notice and the details of the sale were not supplied by the plaintiff to defendant. There the trial court grant-

ed a summary judgment to the plaintiff. The Court of Civil Appeals, in reversing, stated that a fact issue was raised because plaintiff did not conclusively establish a valid foreclosure and that a material fact issue was therefore raised.

■ If available at all, the factual information necessary for response to the defendant's affidavit was within the singular possession of the plaintiffs. The plaintiff could have met much, if not all, of his burden, had he chosen to do so by supplying such information. Giving the defendant every reasonable inference which can properly be drawn in favor of her position, which we must, Gulbenkian v. Penn, supra, 252 S.W.2d at p. 931, we are forced to the determination that the plaintiffs failed to meet their burden by negating evidence which raised a fact issue of a fraudulent sale. Failing in this, plaintiffs have failed to establish that no genuine issue of material fact was in existence.

The cause must be reversed and remanded.